**SIGNED THIS: August 9, 2019**

_____
**Mary P. Gorman**
**United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 17-91140 |
| CHARLES W. FUQUA, II, and | ) | |
| RUTH A. FUQUA, | ) | |
| | ) | Chapter 7 |
| Debtors. | ) | |

## O P I N I O N

Before the Court is the Amended Application for Administrative Expense (#522) filed by Attorney Roy Jackson Dent, III, seeking an award of fees and costs for his representation of the Debtors in this case that was commenced as a Chapter 11 but was converted, over the objection of the Debtors, to Chapter 7. For the reasons set forth herein, the application will be allowed, in part, and denied, in part.

## I. Factual and Procedural Background

On October 20, 2017, Charles W. Fuqua, II, and Ruth A. Fuqua ("Debtors") filed their voluntary petition under Chapter 11. The Debtors were represented in the filing by Attorney Dent, who also filed an application to be employed as the Debtors' attorney. Approval of Attorney Dent's application to be employed was delayed due to deficiencies in the service of the application and problems with the submission of a proper order. Attorney Dent's struggle to get himself employed foreshadowed what was to come in the case—a series of missteps and errors that resulted in conversion of the case. A brief review of the case history is necessary to put Attorney Dent's request for fees, and this Court's denial of most of his request, in proper context.

On their petition, the Debtors checked the box indicating that they were small business debtors. That section of the petition provides direction to debtors to attach their "most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return" or to file, within seven days of the order for relief, a statement under penalty of perjury that such documents do not exist.[1] Because neither the required small business documents nor the statement was timely filed, a deficiency notice was sent, and only then did the Debtors file the required documents.

The Debtors scheduled ownership of forty-one parcels of real estate; they claimed to be the sole owners of twenty parcels and to own a one-half interest in the other twenty-one parcels. Their real estate holdings were valued at slightly more than $3 million. They also scheduled ownership of about $83,000 of

---

[1] The direction is made pursuant to the requirements of 11 U.S.C. §1116(1).

personal property including automobiles, trucks, a boat, a camper, tools, several small bank accounts, clothing and personal effects, and household goods and furnishings. The Debtors listed approximately $2.3 million in debt secured by their real estate and personal property. Their major secured creditors were identified as First Federal Savings and Loan ("First Federal"), Prairie State Bank & Trust ("Prairie State"), and First Financial Bank ("First Financial").

About four months into their case, the Debtors began filing numerous applications to employ real estate agents—many seeking to employ the same agents but dealing with different properties. Approval of a number of the applications was delayed due to deficiencies in proposed orders; other applications were stricken after Attorney Dent failed to comply with deficiency notices regarding proper service. Ultimately, however, several real estate agents were hired and, within a month, the Debtors began filing motions to sell real estate free and clear of liens.

The Debtors' sale motions were generally granted after notice and hearing, with all orders requiring that the secured creditors' liens attach to the sale proceeds but not specifically authorizing the distribution of proceeds except for the payment of closing costs. Prairie State appeared at several hearings on motions relating to the sale of properties upon which it claimed a lien and negotiated orders allowing for the payment, at closing, of its purchase-money liens and for the escrowing of any additional proceeds pending further court order. After a number of sale orders were entered, Attorney Dent began filing documents, each labeled "Report of Sale" but which were not, in fact, reports of sale. To the contrary, each document reported that a specific property had not been sold

because the title company closing the transaction found that the orders drafted by Attorney Dent failed to provide sufficient direction regarding what closing costs, if any, could be paid. The so-called reports of sale sought modification of the previously entered sale orders. Because the "reports of sale" were not the proper method for seeking relief from prior orders, they were all stricken.

Attorney Dent then began filing motions seeking to modify the previously entered orders. At a hearing on several of those motions, he suggested that one allowable closing cost should be a "deed preparation" fee for whatever attorney the title company might hire to draft documents for the Debtors. Attorney Dent provided no explanation for why he was not representing the Debtors at the real estate closings and in the preparation of closing documents or how an attorney not employed through the proper bankruptcy court process could be compensated from sale proceeds. His request for compensation for unnamed and unknown attorneys to be allowed as a closing cost was denied.

One of the first properties of the Debtors to sell was their residence in Neoga, Illinois. Attorney Dent filed an actual report of sale after that transaction closed. The report of sale disclosed that the net proceeds of approximately $239,000 available after paying closing costs and the Debtors' homestead exemption, had been paid to First Federal and that $1250 had been paid to an attorney representing the Debtors at closing. First Financial filed an objection to the report of sale asserting that the first and second mortgages held by First Federal could not have exceeded a total of $150,000 and that the payment of all net proceeds to First Federal was therefore improper. At a subsequent hearing, the attorney for First Federal stated that First Federal had received a check in the

mail after the closing on the Debtors' residence and had used the proceeds to pay not only the notes secured by mortgages on the residence but other debts, including auto loans. Attorney Dent admitted that he had not given direction to the title company about holding the proceeds pending further order of court. He also reported that he had no idea that the Debtors had hired an attorney to assist with the closing, although he admitted that he did not draw the required closing documents or otherwise assist in the closing himself.

On August 15, 2018—299 days after the case filing and one day before the statutory deadline—the Debtors filed their Chapter 11 plan and disclosure statement. An order was entered conditionally approving the disclosure statement, and the disclosure statement was set for a final hearing along with plan confirmation. The disclosure statement and plan drew objections from the United States Trustee ("UST") and several creditors. First Financial responded to the documents by filing a motion to convert the case to Chapter 7.

The Debtors' disclosure statement and plan were wholly inadequate. The disclosure statement contained no financial projections or discussion of any tax consequences notwithstanding the fact that the Debtors were in the process of selling multiple parcels of real estate. The disclosure statement did include a "disposable income" calculation, but it contained at least one mathematical error and included rents from properties that had already sold or had sales pending. The plan provisions for secured creditors said that additional properties would be sold to pay secured debt but contained no details or plan of action for the sales and set no deadlines for selling at private sale or public auction. Likewise, the provisions for the payment of unsecured creditors were vague and lacking in

detail. The plan said that the first payment to unsecured creditors would be made in 120 days but did not say how much would be paid or when future installments would be due. In short, the provisions for the payment of both secured and unsecured creditors were too vague to be enforceable. Because no deadlines or performance benchmarks were included in the plan, there would never be a point under the plan's terms when any creditor could establish that the Debtors were in default. At the hearing on final approval of the disclosure statement and plan confirmation, Attorney Dent conceded that the disclosure statement and plan were wholly inadequate and that the Debtors could not put forth a confirmable plan. Thus, both confirmation of the plan and final approval of the disclosure statement were denied, effectively derailing the Debtors' Chapter 11 small business reorganization.

Attorney Dent asked the Court to dismiss the case rather than convert it so as to avoid further delay given the number of pending sales. Finding that an oral motion to dismiss the case without notice to creditors was inappropriate, the Court denied the oral motion and set a hearing on First Financial's motion to convert. Prairie State and First Federal subsequently filed motions to dismiss, which were set for the same hearing date. The Debtors never filed their own written motion to dismiss.

At the hearing on the motion to convert and the motions to dismiss, the Court heard competing argument about which course of action would be in the best interests of creditors. The Court agreed with creditors in favor of conversion, finding that continued oversight of the Debtors was needed and that the appointment of a Chapter 7 trustee would benefit creditors. The Court noted that

the Debtors—whether through their own fault or that of their attorney—had not come close to complying with their obligations as debtors-in-possession. The Court also pointed out that the case was intended to be a liquidating one from the beginning, yet no attention had been paid to the details necessary to effectuate such liquidation through a confirmable plan. For example, no accountant had ever been employed even though the liquidation consisted largely of selling real estate and accounting work was unquestionably required to determine the potential tax consequences of those sales. Attorney Dent admitted that he had not sought to employ an attorney to represent the Debtors at the closings and that he himself had not attended the closings, resulting in the improper distribution of sale proceeds. The Court entered an order converting the case to Chapter 7 after the hearing.

On April 8, 2019, Attorney Dent filed his Application for Administrative Expense and Compensation and Reimbursement of Expenses by Attorney for Debtors. In his two-page, nine-paragraph application, Attorney Dent sought approval of fees and expense reimbursement totaling $31,686.98. He also sought to apply $20,000 held as a retainer against the balance of his fees and expenses and to have the remainder paid with administrative expense priority from the bankruptcy estate. Other than stating that all of the work that he did was in connection with the case, Attorney Dent provided no justification for his requested fees and expenses. He attached to his application an affidavit signed by himself, attesting to his services, as well as ten pages of time records that lumped all work and expenses into a single category and in chronological order.

Objections to the application were filed by the UST and the Debtors

themselves complaining of both the reasonableness of the fees requested by Attorney Dent and the inadequacy of his request. Attorney Dent, in turn, filed a response defending his actions in the case and the adequacy of his application. At a hearing held on the application, Attorney Dent said that he had reviewed the applicable standards and argued that he had sufficiently justified his entitlement to the fees and expenses requested. The Court noted that it was Attorney Dent's responsibility to establish his entitlement to compensation and that his application did not meet the minimum requirements necessary to obtain any fee award. The Court found the application to be wholly inadequate and agreed with the UST that the application was defective because it did not include a narrative of the work done and because the attached time records were not broken down into categories showing the projects or types of work performed and the corresponding amount of time spent in each area.

The UST's attorney also pointed out other problems, including amounts charged by Attorney Dent for his time spent to cure deficiencies in his filings or otherwise correct his own mistakes and the fact that he waited until the last minute to file a plan and disclosure statement. In that regard, the Court noted that the case was littered with deficiencies and that such deficiencies should not be considered what Attorney Dent described as "par for the course." Attorney Dent was admonished that the issuance of a deficiency notice means that a mistake has been made and that practicing law by deficiency notice is not something for which attorneys should be compensated. Attorney Dent, at his request, was given fourteen days to file an amended application. And although interested parties were also given time to object to the anticipated amended application, the Court made

clear that it would consider the objections made to the original application in reviewing any amended application.

Attorney Dent subsequently filed a three-page, eleven-paragraph Amended Application for Administrative Expense ("Amended Application"). In it, Attorney Dent says that the Debtors approached him in late 2016 with cash flow problems relating to their investment and rental properties. Over the next eleven months, he met with the Debtors several times and otherwise communicated with them to gain an understanding of their full financial situation while still trying to liquidate certain assets with the hope of avoiding bankruptcy. According to Attorney Dent, he aggressively marketed the Debtors' real estate, noting that it was an important part of the Debtors' strategy to reduce their debt. Attached to the Amended Application was the same set of time records that had been attached to the original application. According to the Amended Application, Attorney Dent's time management software does not allow him to edit a billing statement once it has been generated, and he said that he was therefore unable to provide a breakdown of services by category to show the work he had done in a manner consistent with the standards for compensation. He provided no explanation of why he had not completed the required task manually.

After the time for objections to the Amended Application expired, the matter was taken under advisement and is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois

have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving the administration of the estate, the allowance of claims against the estate, and the adjustment of the debtor-creditor relationship are core proceedings. 28 U.S.C. §157(b)(2)(A), (B), (O). This matter arises from the Debtors' bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III. Legal Analysis

Section 327 of the Bankruptcy Code provides for the employment, with the court's approval, of disinterested professional persons "that do not hold or represent an interest adverse to the [bankruptcy] estate" by the trustee to represent or assist the trustee in carrying out the trustee's duties. 11 U.S.C. §327(a). Generally, a Chapter 11 debtor in possession has many of the same rights, powers, and duties of a trustee. 11 U.S.C. §1107(a). This includes the right to employ attorneys and other professionals. *See In re Copenhaver, Inc.*, 506 B.R. 757, 761 (Bankr. C.D. Ill. 2014). Here, the employment of Roy Dent as counsel for the Debtors was approved on November 27, 2017.

"Section 330 of the Bankruptcy Code provides the statutory authority for awarding compensation for the services and reimbursement for the expenses of properly employed professionals." *In re Gvazdinskas*, 2010 WL 1433308, at *2 (Bankr. C.D. Ill. Apr. 8, 2010) (citing 11 U.S.C. §330). Generally, a court may award professionals reasonable compensation for services rendered and reimbursement of actual and necessary expenses. 11 U.S.C. §330(a)(1)(A)-(B).

Before the fees or costs of a properly employed professional can be paid, a fee application must be "filed with the court which details the work done and expenses advanced for which compensation is sought." *In re Vancil Contracting, Inc.*, 2008 WL 207533, at *2 (Bankr. C.D. Ill. Jan. 25, 2008); *see* Fed. R. Bankr. P. 2016(a). Prior to providing any service, professionals "should first scrupulously weigh and assess the necessity and appropriateness of each task for which [they] will be seeking compensation." *Vancil Contracting*, 2008 WL 207533, at *2 (citing *In re Wildman*, 72 B.R. 700, 707 (Bankr. N.D. Ill. 1987)).

The court has an independent duty to examine the reasonableness of fees requested. *Id.* at *2 (citations omitted). The ultimate burden of proving entitlement to requested fees is on the applicant, and fee applications "must provide sufficient information for a court to understand what services were actually provided and to determine whether the fees requested are reasonable and the services rendered were necessary and beneficial." *Gvazdinskas*, 2010 WL 1433308, at *2; *see also Vancil Contracting*, 2008 WL 207533, at *2-3. "A court reviewing a fee application is not required to search through volumes of pleadings in the bankruptcy case and related adversary proceedings in an attempt to find justification for the legal services rendered and the fees requested." *Gvazdinskas*, 2010 WL 1433308, at *2 (citing *In re Taylor*, 66 B.R. 390, 393 (Bankr. W.D. Pa. 1986) (A court "will not indulge in extensive labor and guesswork to justify a fee for an attorney who has not done so himself.")).

"The main objective of a fee application is to disclose sufficient information to enable the court to assess whether the services enumerated thereon were reasonable, actual, and necessary." *Vancil Contracting*, 2008 WL 207533, at *3

(citing *Wildman*, 72 B.R. at 707-08). Bankruptcy Rule 2016 requires that each application be "detailed." Fed. R. Bankr. P. 2016. This can be shown through itemized daily entries. Because it is the applicant rather than the court that has the burden of justifying fees, some organization is required. While itemized daily entries establish the "actual," separating those entries into distinct project categories and including a narrative explanation of the activities or projects helps establish the reasonableness and necessity of the fees asserted. *Wildman*, 72 B.R. at 707. "One running chronological listing combining preference collections, asset sales, and other legal work is not adequate." *Gvazdinskas*, 2010 WL 1433308, at *3.

Attorney Dent's Amended Application fails to meet the basic organizational requirements. This is so despite the Court and the UST's attorney pointing out the specific defects in the original application and Attorney Dent having the opportunity to amend his original application. His original application merely recited the procedural history of his employment, cited several Code sections, and contained a blanket statement that the fees requested were for services provided in connection with the case. Attached to the application were time records, organized chronologically, with no break down of distinct projects or categories. Not even the expenses for which Attorney Dent sought reimbursement were separated from the other time entries. Even though Attorney Dent was admonished that the original application was insufficient to justify any fee award, he made little effort to correct the issues in his Amended Application.

The narrative included in the Amended Application consists of a few short paragraphs explaining the factors leading up to the Debtors' bankruptcy filing and

outlining Attorney Dent's efforts only in the broadest of terms. But case law requires more. The narrative included in any fee application should set forth and explain the nature, purpose, and propriety or necessity of each particular activity or project. *See Gvazdinskas*, 2010 WL 1433308, at *4. That is not to say that the narrative must be a "comprehensive dissertation on all possible aspects of the issues involved[,]" but it should include enough information to inform the court of the "substance and benefit of the services performed." *Id.* at *5 (quoting *In re CF & I Fabricators of Utah, Inc.*, 131 B.R. 474, 487 (Bankr. D. Utah 1991)). Attorney Dent's Amended Application wholly fails to satisfy the standard. It does not describe his efforts with respect to any particular activities or projects. Nor does he explain to what extent he believes his efforts were successful or what obstacles he faced in trying to obtain success. He identifies no benefit to the Debtors' estate from his work. The Amended Application provides no insight to help the Court understand why Attorney Dent would be entitled to any of the fees he requested.

The time records attached to the Amended Application are exactly the same as the time records attached to Attorney Dent's original application. None of the charges are broken down by category and instead are lumped together with expenses chronologically. In an effort to explain why he had not heeded the Court's comments from the initial hearing, Attorney Dent says that his time management software does not allow for editing after a billing statement has been generated. But the success of Attorney Dent's Amended Application depends wholly on his ability to prove his entitlement to the fees requested. His suggestion that, because he cannot push a button on his computer and print out a complete fee application, the requirements for fee applications should to be waived here is

without merit. Regardless of the type of software an attorney uses, a fee application demands more than simply generating a computer printout. At a minimum, a successful fee application requires a review of the work done, creation of narratives explaining the projects undertaken, and the polishing-up of time records to make sure that they accurately and clearly identify the work done. Here, Attorney Dent created no narratives and appears to have spent no time reviewing or polishing-up his time records. His Amended Application is so deficient that a denial of all fees and expenses would be justified. Nevertheless, the Court reviewed the Amended Application and time records, such as they are, for any sign that fees should be awarded. The review did not yield much to benefit Attorney Dent.

Attorney Dent's final two time entries on the attachment to his Amended Application stand out. They include a $1500 charge for meeting with the Debtors and drafting the disclosure statement and plan on "08/11/2019" and a $1200 charge for traveling to and from Urbana, Illinois, to participate in the hearing on motions to convert and dismiss the case on "11/07/2019." The entries—dated for dates yet to occur as of the filing of the Amended Application—obviously involve typographical errors. But the entries also confirm the total lack of review of the time records by Attorney Dent in preparing his applications. And the entries shed light on two larger problems with Attorney Dent's representation of the Debtors in this case—his excessive charges for travel and his failure to spend sufficient time developing a Chapter 11 plan.

The November 7th entry likely refers to the hearing on the competing motions to convert or dismiss held November 7, 2018, rather than November 7,

2019. According to Mr. Dent, he incurred $1200 in fees traveling to and participating in the hearing. A more thorough review of the time records reveals no less than $8550 of Attorney Dent's more than $30,000 request was incurred for traveling to and participating in hearings—a number of which were set to address his own deficiencies and mistakes. Further, Attorney Dent is a regular practitioner before the Court, and, on most of the hearing dates in this case, his presence was required at the same time for other clients in other cases. Attorney Dent provides no justification for charging all travel time on such occasions to the one client who might be able to pay.[2] Perhaps most troubling in the time entries are two separate $1200 charges for hearings and travel on September 12, 2018, even though only one hearing was held that day in this case, and Attorney Dent most certainly only traveled to Urbana once that day. Even the most cursory review of his time records before submission should have alerted Attorney Dent to this error. Double billing of this magnitude is not just sloppy—it is unprofessional.

The August 11th entry is the only time entry that involves the actual drafting of the Chapter 11 plan, which was filed August 15, 2018. Thus the entry most likely should have been dated August 11, 2018, rather than August 11,

---

[2] Although the Seventh Circuit has stated that it is appropriate to grant attorney fees for travel time as a lost "opportunity cost," courts vary as to whether and to what extent such fees should be awarded in a particular instance. *See In re Gluth Bros. Const., Inc.*, 2011 WL 4344599, at *4 (Bankr. N.D. Ill. Sept. 14, 2011) (citing *In re Maurice*, 69 F.3d 830, 834 (7th Cir. 1995); *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984)). Because the Amended Application is deficient for a variety of reasons and the denial of fees here does not hinge simply on Attorney Dent's billing his full hourly rate for travel, the Court leaves for another day the issue of proper billing for travel to attend hearings and the various factors that could impact the propriety of granting fees in one circumstance and not another.

2019. In any event, the entry suggests a lack of diligence in the case by Attorney Dent. Because this case was filed as a small-business Chapter 11, the Debtors faced strict deadlines for filing a confirmable plan. *See* 11 U.S.C. §1121(e)(2). The fact that Mr. Dent spent only five hours meeting with the Debtors and drafting the plan and disclosure statement just a few days before the filing deadline expired is telling of what occurred not only thereafter but throughout the case. The hastily-prepared documents contained errors, lacked detail, and were wholly inadequate.

One of the Debtors' chief complaints about Mr. Dent's legal services was the fact that it took him so long to even file the bankruptcy petition in the first place. Attorney Dent contends that he worked with the Debtors to collect and compile information in anticipation of bankruptcy but that the Debtors themselves were not motivated to file their case until their pontoon boat was repossessed. A review of Attorney Dent's time records certainly evidences an absence of motivation in filing given that he billed a total of twelve hours between October 2, 2016, and October 20, 2017—the date the petition was filed.[3] Regardless of motivation and timing of the filing, it clearly appears now that Attorney Dent was not prepared at the time of filing to represent the Debtors on a fast-track, small-business Chapter 11 case. His lack of preparation and readiness is evidenced by the numerous deficiencies issued in the case and the singular, failed attempt at plan confirmation late in the game.

---

[3] And the disclosure now, for the first time, that the Debtors owed Attorney Dent fees when the case was filed raises the question of whether his initial disclosure with his application to be employed was accurate and complete. Although Attorney Dent disclosed that he had been representing the Debtors pre-petition, he made no disclosure of any fees due or owing at the time.

Attorney Dent argues that deficiency notices are par for the course in the practice of bankruptcy law, but that is simply not the case. And it is important to note that this is not a case where there was a deficiency notice issued here or there or where there were novel legal or procedural issues at play. Rather, the Debtors' Chapter 11 case was littered with deficiencies and adverse rulings that were a direct result of Mr. Dent's lack of preparation and failure to follow through. Awarding Mr. Dent fees for the time he spent correcting his own mistakes cannot be justified.

Attorney Dent did not establish entitlement to the $31,686.98 requested in his Amended Application. Nevertheless, despite all his failures and missteps, some compensation is appropriate as Mr. Dent did compile much of the Debtors' financial information over the course of the case and did effectuate some sales of assets, even if the ultimate Chapter 11 venture was destined for failure. Based on the overall caliber of work and lack of results achieved, the fees awarded to Mr. Dent must be limited. The amount of the no-look fee generally awarded to debtors' attorneys in Chapter 13 cases is $4000, and no more than that can be justified here. And despite his failure to separately itemize his requested expense reimbursement, Mr. Dent will be reimbursed for his expenditures for filing fees in the case. This includes the $1717 Chapter 11 case filing fee, as well as the filing fees for several motions to sell free and clear totaling $1629. All other expenditures appeared to be either not reimbursable as overhead or lacked sufficient detail to justify reimbursement. Awarding Attorney Dent expense reimbursement in the total amount of $3346 despite his  failure to organize his records and straightforwardly establish his entitlement to such reimbursement is

a fair and equitable result under the circumstances.

## IV. Conclusion

Properly employed professionals are entitled to "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." 11 U.S.C. §330(a)(1)(A)-(B). But in order to obtain compensation, an attorney must prove entitlement to such fees. Here, Attorney Dent did almost nothing to prove up his entitlement to fees. Despite being clearly admonished and given an opportunity to file an amended application to meet basic standards, his Amended Application fell woefully short. Not only did Attorney Dent not organize his Amended Application in a way that would enable this Court to assess his request, many of his time entries lacked the specificity needed to understand the work done and its benefit, if any, to the estate. In addition, some of Attorney Dent's time records, which served as the basis for calculating his fees, were duplicative or noncompensable as charges to correct the work for which he already charged. And, ultimately, the results achieved in the case do not justify compensation anywhere near the amount requested. As such, Mr. Dent will be awarded $4000 in fees and $3346 in expense reimbursement. That award, totaling $7346, may be paid from the $20,000 retainer held in Mr. Dent's trust account. The balance of $12,654 must be turned over to the Chapter 7 trustee forthwith.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ###